UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KHALED ALI FALLATAH,

        Petitioner,

    v.

WILLIAM BARR, et al.,

        Defendants.

19-CV-379
DECISION & ORDER

---

Khaled Ali Fallatah is a citizen of Saudi Arabia who has been detained for more

than nine months while he awaits a decision on his removal. On March 31, 2019,

Fallatah filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241,

challenging the validity of his detention at the Buffalo Federal Detention Facility in

Batavia, New York. Docket Item 1. On May 20, 2019, the respondents answered,

Docket Item 4, and on May 28, 2019, Fallatah replied, Docket Item 7.

For the reasons that follow, this Court denies Fallatah's petition.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts, taken from the record, come largely from filings with the

United States Department of Homeland Security, Immigration and Customs

Enforcement ("DHS"). Fallatah is a native and citizen of Saudi Arabia who came to the

United States to attend flight school. Docket Item 4 at 2. He therefore was admitted to

the United States on October 4, 2017, as a nonimmigrant vocational student. *Id.*

On August 31, 2018, Fallatah attempted to cross the border into Canada to claim

refugee status. *Id.* He was refused entry and, on his return, he encountered DHS

officers at the Peace Bridge Port of Entry in Buffalo, New York. *Id.* The next day, he

was served with a Notice to Appear charging him with being subject to removal as a

nonimmigrant who failed to maintain or comply with the conditions of the nonimmigrant

status under which he was admitted. *Id.* Fallatah was released on his own

recognizance that day. *Id.*

On September 6, 2018, Fallatah informed DHS that he intended "to enter

Canada by avoiding a Port of Entry and crossing the border near the Indian Reservation

located near Hogansburg, New York." *Id.* at 2-3. He then was taken into custody

because of his stated intent to avoid Canadian immigration officials and violate the

terms of the Alternatives to Detention program under which he was released. *Id.* at 3.

DHS decided to detain Fallatah until immigration proceedings were completed, and

Fallatah requested that an immigration judge ("IJ") review the custody determination.

*Id.*

On October 30, 2018, Fallatah was given a bond hearing, and an IJ declined

bond because Fallatah posed a flight risk. *Id.* A removal hearing was scheduled for

October 30, 2018, but it was adjourned to November 27, 2018, at the request of

Fallatah's attorney. *Id.*

On November 27, 2018, at his removal hearing, Fallatah requested a voluntary

departure to Saudi Arabia, which DHS opposed. *Id.* The IJ adjourned the hearing until

January 7, 2019, to hear argument on Fallatah's voluntary departure application. *Id.*

On January 7, 2019, Fallatah appeared at the hearing but advised that he intended to

withdraw his request for voluntary departure and instead apply for asylum.  *Id.* at 3-4.

The IJ therefore adjourned the removal proceedings until April 11, 2019.[1]  *Id.* at 4.

On January 25, 2019, Fallatah obtained new counsel who submitted an I-589

Form, which is an Application for Asylum and for Withholding of Removal.  *Id.*  On April

5, 2019, Fallatah appeared before an IJ to set a briefing schedule for the I-589

application.  *Id.*  His removal proceedings were adjourned until May 21, 2019, however,

because DHS had not yet made its submission.  *Id.*; Docket Item 7 at 6.  According to

supplemental submissions from Fallatah, the proceedings have since been adjourned to

July 17, 2019.  Docket Item 10 at 1.

Fallatah remains detained at the Buffalo Federal Detention Facility.  *Id.* at 4.

## DISCUSSION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus

whenever a petitioner is 'in custody in violation of the laws or treaties of the United

States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C.

§ 2241(c)(3)).  The government maintains that Fallatah is validly detained under 8

U.S.C. § 1226(a).  Docket Item 4 at 5, 5 at 6.  Fallatah makes three arguments to the

contrary.  Docket Item 1 at 15-16.  First, he argues that his continued detention violates

his right to due process under the Fifth Amendment.  *Id.*  Second, he argues that his

right to due process entitles him to another bond hearing at which the government must

---

[1] Fallatah states that the removal hearing was first adjourned to February 8, 2019, but then rescheduled to April 5, 2019, because the IJ was not available in February.  Docket Item 7 at 6.  DHS's submission does not reflect this.  Docket Item 4-1 at 4-5.

establish by clear and convincing evidence that he presents a risk of flight or danger. *Id.* at 16. Third, he argues that the "government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eight [sic] Amendment." *Id.*

Because Fallatah is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## I.    DUE PROCESS

The Fifth Amendment's Due Process Clause forbids depriving any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982). At the same time, however, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (internal citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must

4

still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

The parties agree that Fallatah is detained under 8 U.S.C. § 1226(a). *See* Docket Items 1 at 8, 5 at 5. That statute provides that "[t]he Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (quoting § 1226(a)). It requires a bond hearing before an immigration judge to determine whether the alien's detention is necessary while removal proceedings are pending. *See id.* at 837 ("[T]he Attorney General 'may release' an alien detained under § 1226(a) 'on bond . . . or conditional parole.'"). But Fallatah already has had his § 1226(a) bond hearing, and § 1226(a) does *not* require "periodic bond hearings every six months." *Id.* at 847. Furthermore, in light of *Jennings*, § 1226(a) cannot be read to include other significant procedural protections to avoid constitutional concerns. *See id.* at 847-848.

The Due Process Clause is not offended even by mandatory detention of aliens without a hearing for the "*brief period necessary* for . . . removal proceedings." *Demore* 538 U.S. at 513 (2003) (emphasis added). In *Demore*, the Court explicitly noted that "in the majority of cases [§ 1226(c) detention] lasts for less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Id.* at 529. Diving even deeper, the Court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." *Id.* And "[i]n the remaining 15% of cases, in which the alien appeals the decision of the

Immigration Judge to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter." *Id.*

### A.     Substantive Due Process

Fallatah argues that his detention violates his right to substantive due process. Docket Item 1 at 15.  He has been detained by DHS since September 6, 2018—more than nine months.  Nevertheless, this Court cannot say that detention that long necessarily violates due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, detention under § 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees that pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749.  Although there comes a time when the length of an alien's detention pending removal violates due process regardless of the procedural protections afforded, that time has not yet come here.  *See Salerno*, 481 U.S. at 747 n.4.

### B.     Procedural Due Process

Fallatah also challenges the procedural safeguards that apply to his continued detention.  Docket Item 1 at 15-16.  "In light of the substantial uncertainty surrounding the detention provisions" in § 1226, *see Hechavarria*, 891 F.3d at 58, this Court has evaluated procedural due process challenges to immigration detention with a two-step inquiry.  *See Hechavarria v. Sessions*, 2018 WL 5776421, at *5-*9 (W.D.N.Y. Nov. 2, 2018).  As the first step, the Court considers whether the alien's detention has been

unreasonably prolonged.  *Id.* at *5-*7.  If it has not been, then there is no procedural due process violation.[2]  *See Sankara v. Whitaker*, 2019 WL 266462, at *5 (W.D.N.Y. Jan. 18, 2019).  But if it has been, the Court proceeds to step two and "identif[ies] . . . the specific dictates of due process" by considering the *Mathews v. Eldridge* factors.  424 U.S. 319, 335 (1976).  *See Hechavarria*, 2018 WL 5776421, at *7-*9.  If the government has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process.  *See id.* at *9.

### 1. Fallatah's Detention

"[C]ourts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'"  *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)).  Factors bearing on this question include (1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal.  *See Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019).

First, and most important, courts consider the length of detention.  Fallatah has been in DHS custody since September 6, 2018—more than nine months.  That is longer than the four-month average period contemplated in *Demore*.  538 U.S. at 529.  "As

---

[2] This presumes, however, that DHS has not "in an arbitrary or categorical manner, . . . den[ied] an alien access to the administrative processes in place to review continued detention."  *Zadvydas*, 533 U.S. at 724 (Kennedy, J., dissenting).  If DHS denied access to applicable administrative processes arbitrarily or categorically, "habeas jurisdiction would lie to redress the due process violation caused by the denial of the mandated procedures."  *Id.*

detention continues past a year, courts become extremely wary of permitting continued custody." *Muse v. Sessions*, 2018 WL 4466052, at *4 (W.D.N.Y. Sep. 18, 2018). However, "the sheer length of the proceedings is not alone determinative of reasonableness." *Debel v. Dubols*, 2014 WL 1689042, at *5 (S.D.N.Y. Apr. 24, 2014). And the end of Fallatah's continued immigration detention—one way or another—appears to be in sight: his next appearance before an IJ is only a month away. In other words, it is not "lengthy . . . with no end in sight." *Manley v. Delmonte*, 2018 WL 2155890, at *1 (W.D.N.Y. May 10, 2019). So at nine months with a hearing date around the corner, this factor weighs only slightly in Fallatah's favor.

Second, courts consider the conditions of detention. But neither party has supplied the Court with any information about the conditions that Fallatah faces at the Buffalo Federal Detention Facility beyond the deprivation of liberty inherent in any detention. *See* Docket Item 7 at 6. So this Court cannot address that factor.

Third, courts consider whether either side is responsible for the delay. The Second Circuit has indicated that this factor weighs against an immigrant who has "'substantially prolonged his stay by abusing the processes provided to him,'" but not "an immigrant who simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).

Here, Fallatah's detention began on September 6, 2018, when he was first detained by DHS after he threatened to travel to Canada by avoiding a Port of Entry. Docket Item 4 at 3. Within two months, on October 30, 2018, he was given a bond hearing where an IJ decided that he posed a risk of flight—not a surprising finding given

the circumstances of his detention.  *Id.*  Fallatah's removal hearing had been scheduled for the same day but has since been delayed at least four times.  *Id.* at 3-4.

"The delays that have prolonged" Fallatah's detention "have largely been due to extensions . . . that he—or his attorney—requested."  *Manley*, 2018 WL 2155890, at *2; *see also, e.g.*, *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018) ("the majority of the delay in Petitioner's immigration results is directly attributable to Petitioner's own delay in acquiring counsel and ultimately filing his petition for relief.").  His attorney requested the first adjournment.  Docket Item 4 at 3.  Fallatah's removal hearing was adjourned again on November 27, 2018, because he requested a voluntary departure to Saudi Arabia.  *Id.*  On January 7, 2018, it was adjourned yet again because Fallatah changed his mind and wanted to withdraw his request for voluntary departure and instead apply for asylum.  *Id.* at 3-4.  And it was subsequently adjourned to accommodate necessary briefing on Fallatah's newly-raised asylum claim.  *Id.* at 4. Although Fallatah has "every right" to request voluntary departure, apply for asylum, change his mind, and seek additional review of administrative or judicial decisions, "having that right does not mean that it may be exercised without consequence." *Manley*, 2018 WL 2155890, at *2.  Fallatah bears at least some responsibility for the delay he has suffered, and this factor weighs somewhat against him.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  This Court declines to wade into the merits of Fallatah's claims pending before the IJ.  Moreover, neither side has included much about the substantive issues in its briefs to this Court.

After weighing all these factors, this Court finds that Fallatah's detention has not yet become unreasonably prolonged. *See Gonzalez v. Bonnar*, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (granting habeas petition when petitioner had been detained for over a year after previously denying the petition when he had been detained for only ten months and "his individual hearing was scheduled for the following month" and "at least some of the delay . . . was the result of Petitioner's requests for continuances to obtain an attorney."). Therefore, this Court need not turn to the second step of the two-part inquiry to determine what remedy, if any, that demands.

It is worth repeating that Fallatah received the procedural due process to which he is entitled by statute when he was given a bond hearing on October 30, 2018. *See Manley*, 2018 WL 2155890, at *2 ("regardless of whether [the petitioner] was entitled to a hearing under the Due Process Clause, he received one."). At that hearing, the IJ determined that Fallatah "is a substantial flight risk" and that there is "no amount of bond that could ensure [his] appearance in future proceedings." Docket Item 4-2 at 5. Under the statute, Fallatah is not entitled to another hearing unless he can show a material change in circumstances.[3]  *See* 8 C.F.R. § 1003.19(e) ("After an initial bond

---

[3] Fallatah argues that due process requires the government to bear the burden of justifying his detention by clear and convincing evidence. The applicable regulations, on the other hand, assign the alien the burden of demonstrating "to the satisfaction of the officer that [the alien's] release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Although a constitutional defect, such as unreasonably prolonged detention, might require a hearing with a different burden allocation, *see Borbot v. Warden Hudson Cty. Corr. Facility,* 906 F.3d 274, 280 (3d Cir. 2018) ("despite an initial bond hearing, detention under § 1226(a) might become unreasonably prolonged, whether by virtue of government delay or some other cause."); *Brevil v. Jones*, 2018 WL 5993731 (S.D.N.Y. Nov. 14, 2018), the Court finds no constitutional defect here because Fallatah's detention has not yet violated his due process rights.

redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."); *cf. Jennings*, 138 S. Ct. at 847-48 (2018) ("Nothing in § 1226(a)'s text . . . even hint[s] that the length of detention prior to a bond hearing must specifically be considered in determining whether the alien should be released."). Fallatah has not shown such a change, and he therefore is not entitled to a new hearing.

In sum, given the reasons for Fallatah's detention, the reasons for the delays, the length of detention, the upcoming hearing date, and the statutory procedural protections he has been provided, this Court finds that his procedural due process rights have not yet been violated. His petition therefore is denied without prejudice, and he may bring another petition if his situation changes or his detention becomes unreasonably prolonged.

## II.    EIGHTH AMENDMENT

Fallatah also argues that the "categorial denial of bail to certain non-citizens violates the right to bail encompassed by the Eight [sic] Amendment." Docket Item 1 at 16. This Court has recently addressed whether immigration detention can violate the Excessive Bail Clause. *See Sankara v. Barr*, 2019 WL 1922069, at *8-9 (W.D.N.Y. Apr. 30, 2019). The government responds that the Eighth Amendment does not apply to civil confinement. But the Court assumes without deciding that the Excessive Bail Clause does apply to immigration detention.[4]

---

[4] As this Court has noted before, *see Sankara v. Barr*, 2019 WL 1922069, at *9 n.9 (Apr. 30, 2019), the government's position is at odds with Justice Breyer's opinion in *Jennings, see* 138 S. Ct. at 862 (Breyer, J., dissenting). Moreover, if the Excessive Bail

Assuming that the clause applies, it requires "that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S at 754. That "perceived evil," *id.*, may well be the same government concerns supporting immigration detention under the Due Process Clause, such as the risk of the alien's flight and any danger the alien poses to the community or others. *See Demore v. Kim*, 538 U.S. at 518, 527-28. Because the government's interests weighed under the Due Process Clause and the Excessive Bail Clause are likely the same, there is little reason to believe that the Excessive Bail Clause might provide relief for immigration detention when the Due Process Clause does not. *See Sankara*, 2019 WL 1922069, at *9. Therefore, for the same reasons that this Court determined that Fallatah's detention is not unreasonably prolonged as a matter of due process, his detention without an individualized bail hearing would not be "excessive in relation to the valid interests [the government] seeks to achieve," *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007). Furthermore, because the IJ articulated reasons why " there is no amount of bond that could ensure [Fallatah's] appearance in future

---

Clause did not apply to immigration detention proceedings, it would have been much simpler for the Court in *Carlson v. Landon* to have said so instead of asserting that the Clause "merely ... provide[s] that bail shall not be excessive in those cases where it is proper to grant bail" and conversely implying that it may play some role "after unusual delay in deportation hearings." 342 U.S. 524, 545-46 (1952). Furthermore, the Excessive Bail Clause does not expressly restrict its application to "criminal" proceedings—and this Court finds it unlikely that its application may "be avoided by the simple label [the government] chooses to fasten upon its conduct or its statute." *Cf. Sessions v. Dimaya*, 138 S. Ct. 1204, 1229 (2018) (Gorsuch, J., concurring) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966)); *see also Austin v. United States*, 509 U.S. 602, 608-09 (1993) (determining that the Eighth Amendment's Excessive Fines Clause applies to forfeitures of property and emphasizing that the "text of the Eighth Amendment includes no similar limitation" to "provisions of the Bill of Rights [that] are expressly limited to criminal cases.").

proceedings," Docket Item 4-2 at 5, the IJ's denial of bail at his October 2018 hearing did not violate the Excessive Bail Clause.[5]

## CONCLUSION

For the reasons stated above, Fallatah's petition for a writ of habeas corpus is denied without prejudice to filing another petition if his § 1226(a) detention becomes unreasonably prolonged or if, after his order of removal becomes final, his actual removal is no longer reasonably foreseeable. Fallatah's motion to grant the petition as uncontested, Docket Item 6, is denied because the government filed a timely answer and return, Docket Item 4.

SO ORDERED.

Dated:      June 20, 2019
            Buffalo, New York


                                        *s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

---

[5] This is not to say that an IJ's denial of an immigrant detainee's bail could not violate the Excessive Bail Clause if the adjudicator "arbitrarily or unreasonably denied bail." *Brown v. Wilmot*, 572 F.2d 404, 405 (2d Cir. 1978); *United States ex rel. Goodman v. Kehl*, 456 F.2d 863, 868 (2d Cir. 1972) ("we perceive no constitutional distinction between requiring excessive bail and denying bail altogether in the absence of legitimate reasons."). Here, the IJ denied bail because Fallatah "lacks property in the U.S."; "has not resided in the United States for a considerable amount of time"; and "attempted to take flight from the United States by entering Canada." Docket Item 4-2 at 5. So whatever the limits the Excessive Bail Clause imposes on immigration proceedings may be, the hearing Fallatah received in October 2018 did not violate them.